# In the United States Court of Federal Claims

No. 18-539C
(Filed: February 25, 2019)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| **ANDRES CACERES-SOLARI,** | Military Pay; Judgment on the Administrative Record; Not Arbitrary or Capricious and In Accordance with Law. |
| Plaintiff, | |
| v. | |
| **THE UNITED STATES,** | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ORDER AND OPINION

**DAMICH**, Senior Judge.

Before the Court are Defendant United States' ("Defendant") motion for judgment on the administrative record and Plaintiff Andres Caceres-Solari's ("Plaintiff") cross-motion for judgment on the administrative record regarding Plaintiff's entitlement to benefits under the Military Pay Act, 37 U.S.C. § 204(a)(1).

In his Complaint, filed on April 13, 2018, Plaintiff alleges that he was wrongfully discharged from the United States Marine Corps (USMC), denied pay, and denied a promotion after he had been selected for one, as a result of proceedings conducted by the Board of Corrections for Naval Records (BCNR) in which the BCNR upheld the findings of the Board of Inquiry (BOI) relating to the imposition of Plaintiff's non-judicial punishment (NJP) and concurred in the recommendation that Plaintiff be separated from the USMC with an Honorable characterization of service. Plaintiff argues that the findings and conclusions of the BCNR were arbitrary and capricious in that they failed to find a deprivation of due process at the NJP and BOI hearings, failed to consider or minimized the significance of certain evidence and expert opinions concerning Plaintiff's alleged Post-Traumatic Stress Disorder (PTSD) and Traumatic Brain Injury (TBI), and failed to require the USMC to conduct a medical evaluation for PTSD prior to separation. Thus, Plaintiff seeks: (i) payment of all wrongfully denied pay and allowances; (ii) invalidation of the BCNR proceedings; (iii) removal of the NJP from his military records; (iv) promotion to Lieutenant Colonel (Lt. Col.); (v) retirement at the rank of Lt. Col.; (vi) costs and attorney's fees; (vii) and other relief as the Court deems just and proper.

For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Judgment on the Administrative Record and **DENIES** Plaintiff's Cross-Motion for the same.

## I.      FACTS/BACKGROUND

### A.      Background

Plaintiff entered the United States Marine Corps in 1998 following graduation from Officer Candidates School.[1]  Compl. at 2.  Plaintiff served two tours in Iraq: from October 2004–April 2005 and June 2011–December 2011.  During his first tour, Plaintiff witnessed numerous disturbing events and sustained a head injury from a combat-related explosion.  Plaintiff also participated in two humanitarian assistance deployments.  AR0002.

From July 2013–May 2015, Plaintiff was assigned to the Joint Operations Center (JOC) at Headquarters, Allied NATO Joint Forces Command (JFC) Brunssum, Netherlands (JOC Brunssum), where he served as the Land Operations Officer and Deputy Team Leader for Assurance Measures.  AR0002.  While at JOC Brunssum, Plaintiff was accused of certain misconduct, detailed below, which lead to the imposition of a non-judicial punishment and his eventual separation from the USMC.

Before he was discharged, Plaintiff challenged the Marine Corps' actions and raised concerns of post-traumatic stress disorder (PTSD) and a traumatic brain injury (TBI), which were addressed by various military officials and boards, including: the Board of Inquiry, AR0698–0906, the Office of the Naval Inspector General, AR0242, the Marine Corps Deputy Commandant for Manpower and Reserve Affairs, AR0195–0198, AR0208–0211, the Assistant Secretary of the Navy (Manpower and Reserve Affairs), AR0026–029, and the Board for Corrections of Naval Records, AR0001–09.  Ultimately, these challenges were unsuccessful, and Plaintiff was honorably discharged from the Marine Corps on September 15, 2017 at the rank of Major.  AR0001–09; *see generally*, Compl.

### B.      Plaintiff's Selection for Promotion and Allegations of Misconduct at Joint Operations Center, Brunssum

On August 20, 2013, shortly after Plaintiff arrived at JOC Brunssum, the FY 2015 USMC Lieutenant Colonel Promotion Selection Board convened and selected Plaintiff for promotion.  AR0002.  This promotion was to be effective in 2015; however, due to the revelation of potentially adverse information—i.e., allegations of misconduct—Plaintiff's promotion was put in a delayed status.  AR0002; AR0660.  An inquiry into the validity of the allegations resulted in an unofficial complaint that raised concerns of sexual harassment, conduct unbecoming of an officer, adultery, and absence without leave.  AR0002.

### C.      Command Directed Investigation into Allegations of Misconduct

---

[1] Plaintiff also received an undergraduate degree from the University of New Hampshire in 1998, an MBA from Webster University in August 2002, and a Master's Degree in International Affairs from the Naval Postgraduate School in June 2008.

From April 20, 2015 to May 27, 2015, a Command Directed investigation (CI) into Plaintiff's alleged misconduct was conducted.  AR0002.  The CI substantiated the allegations of sexual harassment, conduct unbecoming of an officer, dereliction of duty, indecent language, failure to obey an order (for repeatedly confronting witnesses about their testimony in the investigation into his alleged misconduct), wrongful interference (for wrongfully endeavoring to influence the testimony of a witness in the investigation on one or more occasions), and giving a false official statement (collectively "Plaintiff's Misconduct").  AR0002.  But the CI found that the allegations of adultery, absence without leave, and disrespect to a superior commissioned officer were unsubstantiated.  AR0002.

### D.      Nonjudicial Punishment Proceedings

On June 25, 2015, the Deputy Commander, Marine Forces Europe/Africa (MARFOREUR/AF) notified Plaintiff of his intent to impose nonjudicial punishment (NJP) pursuant to Article 15 of the Uniform Code of Military Justice for the allegations of misconduct substantiated by the CI.  Compl. at 4; AR0017–0021.  On July 2, 2015, Plaintiff acknowledged the NJP notification, confirmed that he had an opportunity to consult with counsel, and agreed to accept the NJP.  Compl. at 4; AR0910.

From June 28 to July 7, 2015, Plaintiff, through counsel, made multiple requests for a copy of the CI.  AR0482–0485.  On July 7, 2015, Major Andrea Goode, the Staff Judge Advocate, replied to Plaintiff's counsel, stating "[d]id you never get a copy [of the CI]?  If not, I'll let him read it when he gets in."[2]  AR0485.  Thereafter, Plaintiff traveled to Stuttgart, Germany, for the NJP hearing the following day.  *See* Compl. at 4.

On July 8, 2015, Plaintiff arrived at the NJP hearing early in order to review the CI.  Compl. at 4.  Due to mechanical issues with Major Goode's computer, Plaintiff had approximately one hour to review the CI.  Compl. at 4.  At the hearing, Plaintiff confirmed that he understood his rights, conferred with counsel, and had an opportunity to review the CI before accepting the NJP.  AR0911–0916.  Plaintiff was then found guilty of the offenses and issued a Punitive Letter of Reprimand and forfeiture of pay which was partially suspended after appeal.  AR0915; AR0003.

### E.      Board of Inquiry Proceedings

On July 30, 2015, the Deputy Commander, MARFOREUR/AF issued a report recommending that Plaintiff be required to show cause for retention in the Marine Corps.  AR0917–0919.  On August 7, 2015, Plaintiff acknowledged receipt of the report and apologized for his misconduct.  Compl. at 5; AR0003.

On August 28, 2015, the Commander, USMC Command (COMMARFORCOM) directed

---

[2] Plaintiff also alleges that the Chief of Staff, MARFOREUR/AR advised Plaintiff "not to make the situation any worse than it already was," Compl. at 4, but supports this assertion with only the hearsay testimony of his wife who allegedly overheard the phone call in which this statement was made.  *See* AR0599–600.

Plaintiff to show cause for retention at a Board of Inquiry (BOI) for substandard performance of duty, misconduct, and moral or professional dereliction. Compl. at 5; AR0003. The specific bases for separation alleged were Plaintiff's failure to demonstrate acceptable qualities of leadership required for an officer of his grade, failure to properly discharge duties expected of an officer of his grade and experience, commission of a military offense punishable by confinement for six months or more, and any other misconduct which would require specific intent for conviction, including violations of the Uniform Code of Military Justice that served as the basis for the NJP. AR0003. On September 1, 2015, Plaintiff acknowledged receipt of the notification to show cause. Compl. at 5.

 October 20, 2015, the Board of Inquiry (BOI) was convened, where Plaintiff was represented by counsel. AR0698. Three witnesses—US Marine Corps Colonel Travis, Hungarian Air Force Lieutenant Colonel József Csösz, and Plaintiff's wife, Danielle Caceres-Solari—testified on Plaintiff's behalf. Two witnesses—US Navy Captain Elizabeth Jackson and US Marine Corps Lieutenant Colonel Rene Orellana—testified on behalf of the Government. Compl. at 5. The BOI also relied on the written statements of Chief Petty Officers Doerfer and Burns, who were unavailable to testify in-person due to a scheduled training exercise in Spain. Compl. at 5; Pl.'s Resp. at 5.

The BOI ultimately substantiated the alleged bases for separation and recommended, by a two-to-one vote, that Plaintiff be separated with an honorable characterization of service. Compl. at 5–6; AR0903–0904. The dissenting member, Lt. Col. Woodworth, concurred with the board's findings and recommended characterization of service but believed that Plaintiff should be retained in the USMC. AR0003. On December 29, 2016, the BOI issued a report (the "BOI Report") setting forth the Board's findings and recommendations. AR0003.

In response to the BOI Report, Plaintiff's counsel alleged myriad deficiencies in the CI, the NJP hearing, and the BOI.[3] AR0003. Specifically, Plaintiff challenged the thoroughness of the CI, challenged the veracity of witnesses, claimed he did not have an adequate opportunity to review the investigation before accepting the NJP, alleged that he was unfairly pressured into accepting the NJP, claimed that he was denied the ability to confront the witnesses against him at the BOI, and asserted that the BOI's recommendation to separate was in error. AR0003.

On May 19, 2016, the COMMARFORCOM addressed Plaintiff's alleged deficiencies and concluded that the CI, NJP proceedings, and BOI were the result of an objective, disinterested evaluation of the evidence, rather than an unreasonably favorable view of the facts as alleged by Plaintiff and his counsel. AR0003. COMMARFORCOM also noted that the procedural history of the case indicated that Plaintiff was afforded due process and that his claims to the contrary were without merit. AR0003.

## F.    Plaintiff's Request Under the Temporary Early Retirement Authority Program

On March 2, 2016, Plaintiff requested permission to retire under the Temporary Early

---

[3] It is unclear to whom Plaintiff submitted this response.

Retirement Authority (TERA) Program.  AR0003.  Plaintiff acknowledged his ineligibility for
TERA based on his military occupational specialty and pending separation proceedings, but
nevertheless sought a waiver of those disqualifications.  AR0003.  On July 22, 2016,
Headquarters, Marine Corps (HQMC) Deputy Commandant for Manpower and Reserve Affairs
(DC (M&RA)) denied Plaintiff's TERA request and instead recommended that Plaintiff be
separated with an Honorable characterization of service.  AR0003.  Although Plaintiff's counsel
submitted additional reasons why Plaintiff should be retained, the Assistant Secretary of the
Navy (Manpower and Reserve Affairs) (ASN (M&RA)) approved the recommendations DC
(M&RA) on August 19, 2016 and ordered Plaintiff's separation with an Honorable
characterization of service.  AR0003–0004.

### G.    Plaintiff's Medical Evaluations and Post-Traumatic Stress Disorder

In early September 2016, after ASN (M&RA) ordered Plaintiff's separation, but before
the separation was affected, Plaintiff sought treatment for, and was diagnosed with post-
traumatic stress disorder (PTSD) by a Primary Care Manager (PCM) non-psychiatric physician
at the Naval Health Clinic in Portsmouth, VA.  AR0004.  After the PCM referred Plaintiff for
further assessment from psychiatric services, a social worker met with Plaintiff and diagnosed
him with Reaction to Severe Stress, deferring a diagnosis of PTSD.  AR0004.

On October 13, 2016, Plaintiff underwent a psychological evaluation with Dr. Jacqueline
Bashkoff, a clinical psychologist in New York, via Facetime.  AR0004.  The psychologist
concluded that Plaintiff suffered from PTSD and opined, without explanation, that the
misconduct which lead to his dismissal was a "direct result" of PTSD.  AR0004.

On October 19, 2016, Plaintiff's counsel contacted Colonel Robert Fifer, Staff Judge
Advocate, MARFORCOM and the Board for Correction of Naval Records (BCNR), raising
concerns that Plaintiff failed to receive a medical evaluation prior to separation and informing
them that Plaintiff had been recently diagnosed with PTSD.  AR0408–0411.  Plaintiff's counsel
also requested a stay of the separation until the chain of command had properly considered the
PTSD diagnosis.[4]  AR0410.

On October 24, 2016, the Commander, MARFORCOM recommended that Plaintiff be
separated from the USMC with an Honorable characterization of service.  Compl. at 8.  On
November 14, 2016, DC (M&RA) wrote an advisory opinion to ASN (M&RA) stating that
"[d]espite Major Caceres-Solari's recent PTSD diagnosis, and [Dr. Bashkoff's] assertion that
such diagnosis influenced Major Caceres-Solari's misconduct, I continue to recommend that he
be separated with an Honorable characterization of service."  AR0004; AR0208–0211.  DC
(M&RA) noted that "[a]lthough they submitted more than 300 pages of materials following his
BOI, neither Major Caceres-Solari nor his military or civilian defense counsel raised the prospect
of his PTSD until after [ASN (M&RA)] approved his separation."  AR0211.

On December 8, 2016, ASN (M&RA) concurred with the recommendation and approved

---

[4] Plaintiff's counsel also requested that Plaintiff be allowed to serve on active duty until he became eligible
for retirement.  AR0408–0411.

Plaintiff's separation with an Honorable characterization of service.  Compl. at 9; AR0208–0211.

### H.    Office of the Naval Inspector General Responds to Plaintiff's Allegations that False Official Statements Were Given During the BOI.

On November 2, 2016, the Office of the Naval Inspector General (NAVINSGEN) responded to Plaintiff's allegations that false official statements that were given during Plaintiff's BOI hearing and that Major Goode, the Staff Judge Advocate, acted inappropriately before and during Plaintiff's NJP.[5]  AR0242.  In this response, NAVINSGEN advised Plaintiff that: (1) the Naval Criminal Investigative Service reviewed the allegations of a false official statement during the BOI and declined to open a case; (2) the Inspector General for Marine Corps Matters responded to Plaintiff on April 12, 2016 advising him on how to submit a Professional Responsibility complaint against Maj. Goode; and (3) the matter was closed but that he may seek further recourse from the Board for Correction of Naval Records (BCNR).  AR0242.

### I.    Plaintiff's Separation is Stayed Pending Medical Evaluation(s)

On January 25, 2017, the BCNR solicited advisory opinions from the Commandant of the Marine Corps and the Bureau of Medicine and Surgery regarding ASN (M&RA)'s decision to separate Plaintiff.  AR0205, AR 0206.  On or about January 27, 2017, Plaintiff underwent an MRI of the brain for a traumatic brain injury (TBI) workup, which indicated some brain damage, and submitted those results to the separation authorities.  AR0684–0687.

On February 8, 2017, ASN (M&RA) ordered a stay of Plaintiff's separation so that he could be evaluated by military medical providers and agreed to reconsider whether separation was still warranted.  Compl. at 9; AR0199.  On February 27, 2017, Plaintiff was evaluated by a neurologist at the Naval Medical Clinic, Portsmouth, who found mild cognitive impairment and a history of mild TBI (concussion).  AR0688–0690.  The neurologist opined that Plaintiff's issues "are mainly related to PTSD and other emotional issues along with pain and insomnia."  AR0689.

On March 21, 2017, psychologist Dr. John Evans, Department Head, Mental Health, US Naval Hospital Portsmouth, evaluated Plaintiff and provided a provisional diagnosis of mild cognitive impairment and chronic PTSD.  AR0666–0683.  Dr. Evans' report, finalized May 2, 2017, opined that PTSD and TBI were unlikely to have affected Plaintiff's judgement and did not contribute to his misconduct, but noted that, based on the performance validity scores, the neurocognitive assessment was "highly unlikely to be an accurate representation of his actual or real neurocognitive abilities."  AR0004–0005; AR0672; AR0680.

On June 13, 2017, DC (M&RA) submitted an updated advisory opinion to ASN (M&RA).  AR0195–0198.  This opinion summarized the procedural history of the case, noting that "on 2 May 2017, a psychologist [Dr. Evans] . . . evaluated [Plaintiff] and found that he does have PTSD and likely also has mild TBI.  The physiologist [sic] determined, however, that [Plaintiff]'s PTSD and TBI were unlikely to have affected his judgment and did not contribute to

---

[5] It is unclear when Plaintiff contacted NAVINSGEN concerning these issues.

his misconduct." AR0195–0198. DC (M&RA) reaffirmed his earlier opinion, concluding that Plaintiff's separation remained in the USMC's best interest. AR0198.

On July 12, 2017, after review of Plaintiff's records and evaluations by other medical providers, CDR Richter, Chief, Bureau of Medicine and Surgery, issued an Advisory Opinion (AO) stating that "based on the preponderance of the evidence . . . there is insufficient evidence to support Mr. Caceres-Solari's contention that he had service-connected PTSD which contributed to his misconduct." AR0194. The AO noted that Plaintiff "was in a highly stressful situation regarding his career status for many months," and that "many of the symptoms [Plaintiff] reported are common symptoms of an Adjustment Disorder possibly related to his current career situation rather than PTSD from deployment experiences." AR0194.

On July 20, 2017, Dr. Jacqueline Bashkoff, the New York clinical psychologist who evaluated Plaintiff via Facetime, supplemented her original October 13, 2016 report, explaining why she believed PTSD was the correct diagnosis and providing support for her initial conclusion that Plaintiff's misconduct was causally connected to his PTSD. AR0173–0176. Dr. Bashkoff also noted that Plaintiff's medical records show "long-term prescriptions of Mefloquine from 2009-2010 and 2014, as well as a concerning level of radioactive Cesium in his body from humanitarian duty as part of [Plaintiff's 2011 humanitarian deployment]." AR0174. Dr. Bashkoff stated that "I am unfamiliar with the effects of long term use of Mefloquine and radioactive cesium." AR0174.

On July 21, 2017, Plaintiff submitted a rebuttal letter to DC (M&RA) and ASN (M&RA), challenging the BOI's findings and recommendations and the DC (M&RA)'s conclusions regarding medical separation proceedings. AR0056–0068. Plaintiff also noted that he did not have a May 2, 2017 appointment with a "physiologist" or any other medical provider, contrary to DC (M&RA)'s letter. AR0066. In addition, Plaintiff submitted a rebuttal to the AO authored by the Chief, Bureau of Medicine and Surgery, in which he summarized his medical history and reiterated that four medical professionals "confirmed [his] PTSD, TBI, and [mild cognitive impairment] as well as linking [his] chronic/severe PTSD to the accusations against [him]." AR 0191–0192.

On July 24, 2017, Plaintiff's counsel requested ASN (M&RA) grant another stay of Plaintiff's separation "pending a personal review of all the records."[6] AR0005. Plaintiff's counsel alleged, in part, that the misconduct was minor, that there were several deficiencies with the BOI, and that Plaintiff's misconduct was a direct result of the psychological complications associated with PTSD. AR0005. Additionally, Plaintiff's counsel argued that HQMC DC (M&RA) failed to do a comprehensive review of the medical records, and that the facts regarding the medical records—i.e., the May 2, 2017 appointment referenced in the DC (M&RA) letter—were wrong. AR0005.

In response, ASN (M&RA) personally reviewed all the documents submitted by Plaintiff's counsel to date and requested another opinion from CDR Richter as to whether the new information changed his original opinion as stated in the AO. On August 21, 2017, ASN

---

[6] It is unclear why ASN (M&RA) needed to grant another stay of Plaintiff's separation.

(M&RA) responded to Plaintiff's allegations in detail.  AR0026–0030.  ASN (M&RA) summarized CDR Evans' response letter, in which he significantly reaffirmed his earlier assessment, concluding that "although [Plaintiff] meets the diagnostic criteria for PTSD, there is no linkage between his PTSD and the misconduct found proven by his BOI."   In addition, ASN (M&RA) found that "the inaccurate reference to 'physiologist' is a scrivener's error, and it did not, and does not, change my opinion of this case," explaining that the May 2, 2017 appointment complained of by Plaintiff was the date that Dr. Evans finalized his report.  AR0027.  The ASN (M&RA) further explained that "[his] predecessor considered Major Caceres-Solari's case three times . . . [and] I have considered Major Caceres-Solari's case twice," and in his opinion, "the Marine Corps' efforts to ensure Major Caceres-Solari was treated equitably were appropriate, thorough, and fair."  AR0028.

On August 10, 2017, Lieutenant Colonel (Lt. Col.) Benjamin Woodworth, a member of Plaintiff's October 2015 BOI who voted against Plaintiff's separation, submitted a letter to the BCNR in support of Plaintiff's retention in the USMC claiming new material evidence strongly rebutted the evidence used by the BOI in their decision to separate.  AR0216–0217.  Specifically, Lt. Col. Woodworth was persuaded by Plaintiff's evidence that he was not afforded an adequate opportunity to review the evidence against him before the BOI, several statements in the Investigation Report were false, and several statements under oath from the Government's witnesses were misleading and potentially false.  Lt. Col. Woodworth opined that had Plaintiff been afforded an opportunity to review the evidence before the BOI and been able to present evidence of the false statements, "the BOI decision to separate would have been more favorable towards Maj. Caceres-Solari."  AR0216.

**J.      Plaintiff Appeals to the Board for Correction of Naval Records Proceedings and Responds to DC (M&RA)'s Advisory Opinion**

On October 21, 2016, Plaintiff appealed to the Board of Correction of Naval Records ("BCNR" or "the Board").  AR0260–0290.  Through counsel, Plaintiff argued: (1) several witnesses recanted their allegations; (2) several accusers made false statements; (3) the Memorandum for Record was fabricated by the Investigating Officer; (4) he was not derelict in his duties; (5) he did not make false statements but rather clarified previous statements; (6) he was not reimbursed for certain expenses related to the NJP; (7) he was required to execute permanent change of station orders without giving the required two-month lease terminations notice, which forced him to pay rent for September 2015; (8) he did not receive the required medical evaluations during the administrative separation processing; and (9) his fitness report (FITREP) reporting chain violated Marine Corps regulations and FITREPS are administratively incorrect.  Compl. at 14; AR0260–0290.

On July 21, 2017, Plaintiff submitted a rebuttal letter in response to DC (M&RA)'s June 13, 2017 letter.  AR0056–068.  In this letter, Plaintiff summarized the case to date, largely reiterating challenges that he raised throughout the various proceedings, and attached 84 documents in support of his position.  AR0056–068.  Plaintiff requested, among other things, to have certain adverse FITREPS removed or amended have "passed for selection" marks deleted from his personnel file.  AR0067–068.

**K.      Board for Corrections of Naval Records Proceedings**

On August 25, 2017, the BCNR convened and on December 18, 2017, issued its decision. AR0001–0009.  After reviewing the facts and evidence regarding Plaintiff's allegations of errors and injustice, the BCNR found a single injustice warranting relief: that Plaintiff should have been reimbursed the official expenses incurred for traveling to the NJP hearing.  AR0006.  The BCNR noted that according to the CI, Plaintiff was "repeatedly corrected by his coworkers for a period of about two years, for inappropriate conversations," and while this misconduct should have been addressed earlier, Plaintiff's "substantiated misconduct was inexcusable, and he was responsible for his actions . . . ."  AR0006.

The BCNR found that Plaintiff pled guilty at the NJP, was advised of his rights, and that the BOI was conducted in accordance with USMC regulations, and was unpersuaded by the subsequent evidence offered by Plaintiff.  AR0006.  Specifically, the BCNR was unpersuaded by Plaintiff's allegations that "witnesses recanted their statements, that his accusers made false statements, that the Memorandum for the Record was fabricated by the Investigating Officer, or that [Plaintiff] did not make false statements."  AR0006.  The BCNR noted that Plaintiff "had the opportunity at the NJP and the BOI to defend against the charges," and that "similar contentions were thoroughly reviewed on multiple occasions at various levels of review, and were found to be without merit."  AR0006.  Moreover, the Board concluded that Plaintiff's "contentions regarding the CI, the IO, NJP, Report of Misconduct, and the BOI were without merit, and that he was afforded due process." AR0006.

The Board also found that based on the evidence in the record, Plaintiff was not required to be evaluated for PTSD or TBI prior to separation "because he had not deployed in support of contingency operations within the last two years, was not being recommended for separation with an Other Than Honorable characterization of service, and had not previously been diagnosed with or reasonably alleged to have suffered from PTSD or TBI."  AR0006–0007. Further, Plaintiff accepted the NJP and apologized for his misconduct, only later attributing the misconduct to PTSD and TBI, then denying any misconduct altogether.  AR0007.

With respect to Plaintiff's allegations that numerous psychologists and neurologists had diagnosed him with service-connected PTSD and TBI from combat deployment, a forensic psychologist connected the effects of PTSD to his alleged misconduct, and that the individual who authored the AO was unable to diagnose him without having met him, the Board fully and carefully considered these contentions in light of guidance memoranda set out by the Secretary of Defense.[7]  After applying those guidelines to the evidence in the case, the Board "was not able to substantiate a nexus between PTSD and/or TBI and [Plaintiff's] misconduct."  The Board

[7] These include: (i) the Secretary of Defense's Memorandum "Supplemental Guidance to Military Boards for Correction of Military/Naval Records Considering Discharge Upgrade Requests by Veterans Claiming Post-Traumatic Stress Disorder," dated September 3, 2014; and (ii) the Principal Deputy Under Secretary of Defense Memorandum "Consideration of Discharge Upgrade Requests Pursuant to Supplemental Guidance to Military Boards of Correction for Military/Naval Records by Veterans Claiming Post Traumatic Stress Disorder (PTSD) or Traumatic Brain Injury (TBI)," dated February 24, 2016 (collectively "the Secretary of Defense's Guidance Memoranda").

9

"significantly concurred with the AO that [Plaintiff] was in a highly stressful situation regarding his career status for many months, and the symptoms he reported were likely related to his career situation rather than PTSD." AR 0007. Thus, the Board concluded that Plaintiff "did not sufficiently demonstrate that, even if the effects of PTSD and TBI existed at the time of his misconduct, the seriousness of his misconduct outweighed any mitigation that would be offered by the PTSD and/or TBI." AR0007.

The Board also found insufficient evidence to establish the existence of probable material error or injustice with regard to Plaintiff's contention that he had been exposed to long term Mefloquine prescriptions and radioactive Cesium. AR0007. The Board "significantly concurred" with the AO in that Plaintiff did not sufficiently demonstrate that the seriousness of his misconduct outweighed any mitigation that would be offered by the exposure to Mefloquine prescriptions and radioactive Cesium. AR0007.

The Board was unpersuaded by Plaintiff's contention that there is precedence for allowing a Marine who has been the subject of NJP and recommended for separation from a BOI to be retained on active duty to achieve retirement status. AR0008. Instead, the Board concluded that each case is judged on its own merits and that the analogy made by Plaintiff's counsel was not germane to the facts and circumstances of Plaintiff's case. AR0008.

With respect to Plaintiff's request for corrections to his FITREPs and deletion of "passed for selection" marks in his personnel file, the Board concluded that these requests were not actionable as he had not yet exhausted all available administrative remedies. AR0008.

The BCNR ultimately recommended that Plaintiff be reimbursed for his travel expenses relating to the NJP in Stuttgart, Germany. AR0008. The BCNR found that no other relief was warranted. AR0009.

L.      **Plaintiff's Discharge and Subsequent PTSD Diagnosis by the Veterans Administration**

On September 15, 2017, Plaintiff was discharged from the USMC with an Honorable characterization of service. AR1414–1416; Compl. at 1. On January 29, 2018, Plaintiff was diagnosed with service-connected PTSD and TBI by the Veterans Administration, and was granted a 50% disability. Compl. at 18. On April 13, 2018, Plaintiff filed the present suit.

II.     **STANDARD OF REVIEW**

Where the parties have filed cross-motions for judgment on the administrative record, as here, Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC") provides a procedure for parties to seek the equivalent of an expedited trial on a "paper record, allowing fact-finding by the trial court." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). Unlike summary judgment standards, genuine issues of material fact do not preclude a judgment on the administrative record. *See id.* at 1355-56. Questions of fact are resolved by reference to the administrative record. *Id.* at 1356.

10

In reviewing the determinations of a military corrections board, a plaintiff must demonstrate "by cogent and clearly convincing evidence," *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986), that the military board's decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006). It is well settled that "responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province; and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983) (citations omitted). Moreover, "military administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs." *Dodson v. United States*, 988 F.2d 1199, 1204 (Fed. Cir. 1993).

A court may set aside an agency's decision if the agency "'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or the decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Ala. Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). However, "[w]hen substantial evidence supports the board's action, and when that action is reasonable in light of all the evidence presented, the court will not disturb the result." *Pope v. United States*, 16 Cl. Ct. 637, 641 (1989). The court's review "does not require a reweighing of the evidence, but a determination whether *the conclusion being reviewed* is supported by substantial evidence." *Heisig*, 719 F.2d at 1157.

## III.   DISCUSSION

Defendant argues that the BCNR decision denying Plaintiff's requested relief was made with a rational basis and in accordance with the law. Specifically, Defendant contends that the BCNR: (1) properly reviewed all of the evidence and found that Plaintiff's due process claims were without merit; (2) made a reasonable and lawful determination that no nexus existed between Plaintiff's misconduct and PTSD or TBI; (3) lawfully and appropriately found that Plaintiff was not required to undergo a medical evaluation for PTSD prior to separation. In addition, Defendant argues that the Court cannot promote Plaintiff or grant his request for retirement at an elevated rank.

In response, Plaintiff alleges numerous deficiencies with the BCNR's decision: (1) the BCNR failed to consider all the evidence supporting a nexus between Plaintiff's PTSD and TBI and his alleged misconduct; (2) Plaintiff was required to undergo a medical evaluation for purposes of detecting PTSD or TBI prior to separation under MCO P5800.16A; (3) Plaintiff's due process rights were violated at the NJP hearing when he was deprived of his right to examine the evidence against him and to confront witnesses before electing to proceed with the NJP; (4) Plaintiff's due process rights were violated at the BOI because he was deprived of the right to confront the witnesses against him and the BOI failed to consider newly discovered evidence; and (5) Plaintiff was never informed of his promotion delay in violation of 10 U.S.C. § 624(d)(1).

**A.      Nexus Between PTSD and TBI and Plaintiff's Misconduct**

Plaintiff presents a myriad of challenges to the BCNR's decision regarding the nexus between Plaintiff's PTSD and TBI and his alleged misconduct.  First, Plaintiff alleges that the BCNR "dismissed and/or minimized the evaluations and findings of three physicians and one licensed clinical social worker who diagnosed [Plaintiff] with PTSD and dismissed and/or minimized Plaintiff's TBI diagnosis in favor of [CDR] Richter's conclusory advisory opinion . . . ."  Compl. at 17.  Second, Plaintiff contends that the "BCNR did not actually consider all the evidence" because it "failed to incorporate Plaintiff's and Dr. Bashkoff's responses to [CDR] Richter's advisory opinion."  Cross Mot. at 12.  Finally, Plaintiff claims that: (1) the BCNR disregarded evidence that Mefloquine and radioactive cesium could have contributed to his misconduct; (2) CDR Richter's conclusion that Plaintiff failed to establish that he had service-connected PTSD is demonstrably false" because the Department of Veterans Affairs (the "VA") determined that Plaintiff's PTSD and TBI were service-connected" after he was discharged; (3) the BCNR faulted Plaintiff for not seeking treatment for PTSD until after he was ordered to separate; and (4) the BCNR erred in relying on Dr. Richter's AO because CDR Richter never evaluated Plaintiff in-person.  Cross Mot. at 12–14.

In response, Defendant argues that: (1) the BCNR properly weighed and considered all of the evidence, including evidence of the Mefloquine and radioactive cesium, which cannot be reweighed by the Court; (2) the VA's post-hoc determination is not binding on the Court; (3) nothing precludes the BCNR from considering when Plaintiff raised the PTSD concern; and (4) nothing required CDR Richter to evaluate Plaintiff in-person before rendering the AO.  Def.'s Mot. at 23–25.

Contrary to Plaintiff's contentions, the record shows that the BCNR fully considered the conflicting opinions regarding Plaintiff's health offered by the numerous medical professionals who evaluated Plaintiff's case and made a reasoned decision based on the evidence.  After Plaintiff raised concerns about PTSD in January 2017, ASN (M&RA) stayed Plaintiff's separation multiple times so that he could be evaluated by military medical providers and solicited an advisory opinion from CDR Evans, Chief, Bureau of Medicine and Surgery, concerning Plaintiff's mental health.  These medical providers gave various diagnoses, including Reaction to Severe Stress with a deferred diagnosis of PTSD, Adjustment Disorder, mild cognitive impairment and mild TBI, and PTSD.  The BCNR Report sets forth the opinion and reasoning of each medical provider that evaluated Plaintiff's case.  Ultimately, the BCNR "significantly concurred" with CDR Richter's opinion and concluded Plaintiff "did not sufficiently demonstrate that, even if the effects of PTSD and TBI existed at the time of his misconduct, the seriousness of his misconduct outweighed any mitigation that would be offered by the PTSD and/or TBI."  AR0007.

Although one Clinical Psychologist—Dr. Bashkoff—opined that Plaintiff's misconduct was a "direct result" of his PTSD, contrary opinions from Dr. John Evans, Department Head, Mental Health, US Naval Hospital Portsmouth, and CDR Evans, Chief, Bureau of Medicine and Surgery, stated, respectively, that Plaintiff's "judgment [did] not appear impaired by [his]

12

psychiatric or neurocognitive condition," AR0680, and that the evidence was insufficient to establish that Plaintiff had "service connected PTSD which contributed to his misconduct." AR0194. While there may be a difference in opinion regarding a nexus between Plaintiff's PTSD and his misconduct, a difference in view does not make the BCNR's conclusion arbitrary or capricious, s*ee Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983) ("courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence."), and it cannot be said that the BCNR's conclusion was unsupported by substantial evidence.

With regard to Plaintiff's allegations regarding evidence of Mefloquine prescriptions and radioactive cesium, the BCNR considered these contentions and "found the evidence was insufficient to establish the existence of probable material error or injustice. AR0007. As the Government points out, Plaintiff "submitted his medical records to the BCNR, including his neurometric testing for radioactive cesium and mefloquine prescriptions." Def.'s Mot. at 6. Plaintiff has failed to rebut the presumption that the BCNR gave due consideration to the evidence and therefore, it cannot be said that the BCNR erred in this regard.

Plaintiff's remaining challenges to the BCNR's determination regarding the nexus between his PTSD and TBI and misconduct can be dealt with summarily.  First, the contention that the BCNR failed to incorporate Plaintiff's and Dr. Bashkoff's responses to the AO is patently false.  The BCNR Report at AR0005–0006, ¶ n., provides "*In his rebuttal statement to the AO, Petitioner stated . . .* " before proceeding to list Plaintiff's and Dr. Bashkoff's challenges to the AO.  AR0005–0006 (emphasis added).  Furthermore, AR0005, ¶ m., refers to ASN (M&RA)'s August 21, 2017 response letter, which addressed Plaintiff's and Dr. Bashkoff's rebuttal letters and discussed CDR Richter's reply as to whether those documents changed his original opinion as set forth in the AO.  AR0005.  Plaintiff also acknowledges in his complaint that "The BCNR 'was not persuaded' by Plaintiff's evidence at the BOI *and in his rebuttal to the BOI's decision*…."  Compl. at 15, ¶ 43 (emphasis added). Thus, it is clear that the BCNR incorporated Plaintiff's and Dr. Bashkoff's responses to the AO.

Second, the VA's post-separation determination that Plaintiff was entitled to benefits for service-connected PTSD and TBI does not invalidate the BCNR's conclusion regarding the *nexus* between such PTSD and TBI and Plaintiff's misconduct.  The VA's benefits decision letter provides that Plaintiff is entitled to 50% disability for PTSD and TBI, but is silent as to whether these conditions contributed to his misconduct.  ECF No., 12-4 (Supplement to the Administrative Record).  Furthermore, as the Plaintiff notes, "[t]he VA does not determine fitness for duty but instead determines a servicemember's level of service-connected disability upon conclusion of military service."  Pl.'s Reply at 3.  As such, the VA's subsequent decision has no bearing on the BCNR determination.

Third, the contention that the BCNR improperly faulted Plaintiff for not seeking treatment for PTSD until after he was ordered to separate is baseless.  The timing of relevant events are evidentiary facts that may be considered in any proceeding.  Plaintiff cites no authority, legal or otherwise, to support his position that the BCNR was precluded from considering the timing of his PTSD claims.  Accordingly, it cannot be said that the BCNR acted

arbitrarily or capriciously by considering those facts in reaching its conclusion.

Finally, Plaintiff has failed to direct the Court to any source of law mandating an in-person evaluation before rendering an advisory opinion.  As stated above, Plaintiff submitted all of his medical records to the BCNR and ASN (M&RA).  CDR Richter reviewed these records and gave his opinion.  As nothing in the law precludes the BCNR from relying on this opinion, it cannot be said that BCNR erred in considering the AO.

In sum, it is clear that the BCNR considered all of the evidence and reached a reasoned decision.  Therefore, the BCNR's decision regarding the nexus between Plaintiff's PTSD and TBI and his misconduct was supported by substantial and was not arbitrary or capricious.

### B.      Medical Evaluation Prior to Separation

Plaintiff maintains that he was required to undergo a medical evaluation for purposes of detecting PTSD or TBI prior to separation under Marine Corps Manual for Legal Administration (MCO) P5800.16A, and that if this had occurred, he would have been properly diagnosed prior to the BOI and the evidence of his diagnoses would likely have resulted in a different outcome. Compl. at 18.  The BCNR addressed this challenge and determined it to be meritless. Specifically, the BCNR found that:

> on the approval date, [Plaintiff] was not required to be evaluated for Post-Traumatic Stress Disorder (PTSD) or traumatic brain injury (TBI) because he had not deployed in support of contingency operations within the last two years, was not being recommended for separation with an Other Than Honorable characterization of service, and had not previously been diagnosed with or reasonably alleged to have suffered from PTSD or TBI.

AR0006–0007.

MCO P5800.16A, § 4002.2, provides the criteria and procedure for medical evaluations prior to separation.  This section provides, in relevant part:

> b.  Medical Evaluation Requirements.  An officer with more than 180 days of active duty service requires a medical evaluation prior to separation. This evaluation must be reviewed and specifically addressed by the chain of command and Alternate Show Cause Authority as to any medical condition affecting (or not affecting) the basis for separation . . . The intent of performing these evaluations is to ensure that the Show Cause authorities and separation authority have all pertinent information about any medical condition(s) that may have a material impact on a marine's behavior, including Post-traumatic Stress Disorder (PTSD) or Traumatic Brain Injury (TBI).
>
> . . .

14

    c.   <u>PTSD/TBI Evaluation</u>

      (1) <u>When Required</u>.  In accordance with 10 USC § 1177, an officer shall receive a medical evaluation to assess whether the effects of PTSD or TBI constitute matters in extenuation that relate to the basis for administrative separation if the officer meets any of the following criteria:

        (a) Is being recommended for administrative separation with an Other Than Honorable characterization of service.

        (b) Was deployed overseas to a contingency operation during the 24 months prior to the initiation of administrative separation proceedings.

        (c) Is diagnosed by an appropriately privileged medical provider . . . as experiencing PTSD or TBI, or reasonably alleges the influence of PTSD or TBI.

MCO P5800.16A, § 4002.2

Title 10, Section 1177 of the United States Code, provides in relevant part:

> the Secretary of a military department shall ensure that a member of the armed forces under the jurisdiction of the Secretary who has been deployed overseas in support of a contingency operation, or sexually assaulted, during the previous 24 months, and who is diagnosed . . . as experiencing post-traumatic stress disorder or traumatic brain injury or who otherwise reasonably alleges, based on the service of the member while deployed, or based on such sexual assault, the influence of such a condition, receives a medical examination to evaluate a diagnosis of post-traumatic stress disorder or traumatic brain injury.

Here, Plaintiff does not dispute that he failed to meet the criteria for a mandatory medical examination prior to separation under 10 U.S.C. § 1177, but instead claims that MCO P5800.16A required this evaluation.  However, as the Government points out, MCO P5800.16A, § 4002.2(c), relating to PTSD/TBI evaluations, cross-references 10 U.S.C. § 1177 and sets forth the same criteria for applicability as stated in § 1177.  *See* MCO P5800.16A, § 4002.2(c) ("<u>When Required</u>.  In accordance with 10 USC § 1177 . . . ."); Def.'s Reply at 5–6.  Applying those criteria, Plaintiff was not entitled to a PTSD/TBI evaluation prior to separation because (1) he was not deployed overseas in support of a contingency operation, or sexually assaulted, during the 24 months prior to his BOI hearing; (2) was not being recommended for separation with an Other Than Honorable Characterization of Service; and (3) was not diagnosed with PTSD until well after he was ordered to separate.  Therefore, the BCNR did not err in concluding that

15

Plaintiff was not entitled to a medical evaluation prior to separation under either 10 U.S.C. § 1177 or MCO P5800.16A, § 4002.2(c).

The Court is also unpersuaded by Plaintiff's argument concerning the USMC's violation of MCO P5800.16A, § 4002.2(b), which provides that a service member with over 180 days of active service is required to undergo a medical evaluation prior to separation. This section is designed to ensure that the separation authority has "all pertinent information about any medical condition(s) that may have a material impact on a marine's behavior." MCO P5800.16A, § 4002.2(b). In this case, even though the BOI may not have had this information at the time of the hearing, ASN (M&RA) was clearly responsive to Plaintiff's concerns and acted to ensure that all pertinent medical information was collected and reviewed before making a determination as to his separation.

In particular, after Plaintiff's counsel raised concerns about PTSD and the lack of a medical evaluation, ASN (M&RA) granted a stay of Plaintiff's separation so that he could be evaluated by military medical providers. Plaintiff was then evaluated by several different medical professionals and the reports of those evaluations were submitted to ASN (M&RA) and the BCNR. The ASN (M&RA) personally reviewed Plaintiff's case a total of five times and determined that separation remained in the USMC's best interest—a recommendation ultimately adopted by the BCNR after its own review. It was only after Plaintiff's medical records were reviewed by multiple occasions and by multiple individuals that the separation was effectuated on September 15, 2017—nearly one year after Plaintiff first raised these concerns. Therefore, even if the USMC failed to adhere to MCO P5800.16A, § 4002.2(b) by requiring a medical evaluation prior to the BOI, it took appropriate steps to ensure compliance with that regulation prior to Plaintiff's actual separation. Accordingly, any error that occurred in this regard was harmless and the Court will not indulge Plaintiff's speculation as to what might have occurred had the evaluations been conducted prior to the BOI.

## C.   Due Process Claims

### i.   Non-judicial Punishment Hearing

Plaintiff contends that his due process rights were violated at the NJP hearing when he was deprived of his right to examine the evidence against him before electing to proceed with the NJP.[8] Specifically, Plaintiff alleges that "despite repeated efforts by Plaintiff and his detailed defense counsel to review the investigation against him, he was not given an opportunity to do so, contrary to Article 15, UCMJ, 10 U.S.C. § 815." *See* Compl. at 4; Pl.'s Cross Mot. at 15. As a result, Plaintiff was provided approximately one hour to examine the investigation file before the NJP hearing. Compl. at 4; Pl.'s Cross Mot. at 15.

Defendant argues that the BCNR was not arbitrary or capricious in finding that Plaintiff's

---

[8] Plaintiff also claims he was deprived of his right to confront the witnesses against him at the NJP in his Cross-Motion but does not actually raise any arguments in support of this claim, and does not raise the issue in the NJP due process section of his Reply. He does however raise this challenge when claiming a due process violation at the BOI. Therefore, the Court will address the challenge in that section.

was afforded the due process required because Plaintiff was advised of his rights, had an opportunity to review the investigative file, and consulted with counsel before agreeing to plead guilty at the NJP.

Based on the record, the Court agrees with the Government that the BCNR's determination regarding the due process violation allegations at the NJP was not arbitrary or capricious. According to the NJP transcript, Plaintiff confirmed that he: (1) understood his right to refuse the NJP; (2) had no questions about his rights and did not desire to make any requests; (3) was willing to accept the NJP; (4) had an opportunity to review the CI; (5) reviewed and understood the charges against him; (6) wished to plead guilty to the charges; (7) conferred with an attorney; and (8) did not have any evidence to support that he was not guilty of the offenses. At no point during this hearing did Plaintiff indicate that he had insufficient time to review the CI or request additional time to review the CI, despite being represented by counsel. The BCNR noted that "similar contentions were thoroughly reviewed on multiple occasions at various levels of review, and were found to be without merit," and after thoroughly reviewing the evidence, found that Plaintiff's "contentions regarding the CI, the IO, NJP, Report of Misconduct and BOI are without merit. AR0006.

In this regard, the BCNR did not err. As the BCNR correctly noted, Plaintiff raised these challenges in his response letter the BOI decision, to NAVINSGEN, DC (M&RA), ASN (M&RA), and at the BCNR. Plaintiff fails to present any evidence rebutting the presumption of regularity that military authorities enjoy, *Dodson v. United States*, 988 F.2d 1199, 1204 (Fed. Cir. 1993), and likewise fails to establish that the BCNR's decision was erroneous.

### ii. Board of Inquiry Hearing

Plaintiff also claims his due process rights were violated at the BOI because the hearing was scheduled for a time when several of Plaintiff's crucial witnesses—Chief Petty Officers Doerfer and Burns—were unavailable to testify in person due to a training exercise in Spain, thereby depriving Plaintiff of his right to confront the witnesses against him.[9] In addition, Plaintiff claims that the BCNR disregarded Captain Jackson's admission after the BOI that her statements under oath were false. Finally, Plaintiff claims that the BCNR disregarded the statement of the sole dissenting BOI member—Lt. Col. Woodworth—that had the BOI considered the evidence Plaintiff discovered after the hearing, it is likely that Plaintiff would have prevailed at the NJP and BOI.

Defendant, on the other hand, contends that the BCNR's "clear referencing" to Plaintiff's arguments that witnesses recanted their statements and that his accusers made false statements shows that the BCNR considered them. Additionally, Defendant argues that: (1) Plaintiff "could have petitioned for a continuance for at least 30 calendar days" in order to confront the witnesses; (2) Plaintiff's failure to petition for a continuance does not invalidate the BOI proceedings; and (3) there is no right to confront witnesses at the BOI, though the respondent may question any witness who appears. *See* Secretary of the Navy Instruction (SECNAVINST) 1920.6C, Enclosure (8), ¶ 6(a), (i), (o).

---

[9] Plaintiff raises this challenge in his complaint and cross-motion, but does not raise it in his Reply.

The BCNR found that "the BOI was conducted in accordance with Marine Corps regulations," and "subsequent evidence [did] not refute the BOI findings or evidence." The BCNR "was not persuaded by the [Plaintiff's] evidence that witnesses recanted their statements, [or] that his accusers made false statements." Ultimately, the BCNR found that Plaintiff was afforded the due process required, noting that Plaintiff "had the opportunity at NJP and the BOI to defend against the charges . . . [and] that similar contentions were thoroughly reviewed on multiple occasions at various levels of review, and were found to be without merit."

With regard to Plaintiff's contentions that he was denied the opportunity to confront the witnesses against him, SECNAVINST 1920.6C, Enclosure (8), ¶ 9, states: "Witnesses not within the immediate geographical area of the Board are considered not reasonably available," and "Statements or depositions shall be admitted and considered by BOI from witnesses not reasonably available to testify during a board proceeding." *Id*. at (b), (c). As Plaintiff acknowledges, the witnesses at issue were in Spain at the time of the BOI. Compl. at 5; Pl.'s Cross-Motion at 16. These witnesses were clearly not "within the immediate geographical area of the Board," and therefore "not reasonably available." SECNAVINST 1920.6C, Enclosure (8), ¶ 9(b). Therefore, the Board was permitted to rely on the statements or depositions of those witnesses in lieu of in-person testimony. SECNAVINST 1920.6C, Enclosure (8), ¶ 9(c).

Moreover, the Government correctly observes that SECNAVINST 1920.6C, Enclosure (8), ¶ 6(a), permits a respondent to request a 30-day continuance. The failure to invoke this right is not a basis for invalidating the BOI proceedings. SECNAVINST 1920.6C, Enclosure (8), ¶ 6(o). Thus, the BCNR's finding that the BOI was conducted in accordance with Marine Corps regulations was not arbitrary, capricious, or contrary to law.

Plaintiff's allegations that the BCNR disregarded Captain Jackson's admission that her earlier statement under oath was false and evidence that Lt. Col. Orellana made false statements, are likewise meritless. The BCNR expressly stated that it "was not persuaded by [Plaintiff's] evidence that witnesses recanted their statements, that his accusers made false statements, that the memorandum for the Record was fabricated by the [Investigating Officer], or that he did not make false statements." AR0006. At this stage of the proceedings, the Court cannot reweigh the evidence, *see Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983), and Plaintiff has not shown that this decision was arbitrary, capricious, or unsupported by substantial evidence.

Similarly, Plaintiff's contention that the BCNR disregarded the statement of Lt. Col. Woodworth—the sole dissenting BOI member—is baseless. This statement was based on Plaintiff's evidence that: (1) he was denied an opportunity to review the evidence against him before accepting the NJP; (2) several statements in the Investigation Report were false; and (3) the statements of Capt. Jackson and Lt. Col. Orellana were misleading and potentially false. As stated above, the BCNR addressed these contentions directly, finding them unpersuasive. At this stage of the proceedings, the Court cannot reweigh the evidence, *see Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983), and Plaintiff has not shown that this decision was arbitrary, capricious, or unsupported by substantial evidence.

**D.      Failure to Notify Plaintiff of Promotion Delay**

In his Cross-Motion, Plaintiff alleges for the first time that he was never informed of his promotion delay in violation of 10 U.S.C. § 624(d)(4). Pl.'s Cross-Motion at 17. The law, however, is clear that "any issue not raised before a Corrections Board is waived upon appeal to this [C]ourt." *Lewis v. United States*, 99 Fed. Cl. 17, 19 (2011) (Hodges, J.), *see also Murakami v. United States*, 398 F.3d 1342, 1354 (Fed. Cir. 2005) ("We find no record evidence that Murakami raised the argument . . . with the administrative agency. The Court of Federal Claims thus correctly concluded that the argument was waived.").

Plaintiff claims to have raised this issue in paragraph 17(f) of his July 21, 2017 rebuttal letter to DC (M&RA); Pl.'s Reply at 5; *see* AR0067–068. However, this paragraph relates only to the "passed for selection" notations in Plaintiff's personnel files, which he attributes to the late submission of certain fitness reports. AR0067–068. Contrary to Plaintiff's assertions, paragraph 17(f) makes no reference whatsoever to "promotion delay." *See* AR0067–068. In fact, the only other reference to Plaintiff's promotion standing is contained in a single sentence of paragraph 17(d), which states, in relation to Plaintiff's requested relief of promotion to rank of Lt. Col., "I am currently still selected, with a delayed promotion." AR0067. As Plaintiff failed to raise the challenge before the BCNR, it has been waived.

**E.      Court's Power to Promote Plaintiff and Grant Retirement at an Elevated Rank**

Plaintiff also requests that the Court promote him to the rank of Lt. Col. and grant him retirement at the rank of Lt. Col. Compl. at 20. The Court is unpersuaded that such relief is warranted. The BCNR determined that Plaintiff entitled to a promotion or retirement at an elevated rank when he raised the issue there. *See* AR0001, AR0008–09. The Court has consistently refused to interject itself "into the discretionary military promotion process even if legal error was in some respect committed." *Doggett v. United States*, 207 Ct. Cl. 478, 482 (1975). Here, as stated above, no legal error has been committed. Therefore, Plaintiff's requests in this regard are denied.

## IV.    CONCLUSION

In sum, Plaintiff failed to meet his burden of presenting "cogent and clearly convincing evidence," *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986), that the BCNR's decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to law.  *See Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006).  The record is clear that BCNR considered all of the evidence and reached reasoned decisions based on that evidence.  Therefore, the Court hereby **GRANTS** Defendant's Motion for Judgment on the Administrative Record and **DENIES** Plaintiff's cross-motion.  The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/Edward J. Damich
EDWARD J. DAMICH
Senior Judge